IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HAROLD VENTON DALE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>acting commissioner of Social )<br>Security,[1] )<br>)<br>Defendant. ) | No. 12 C 9904<br><br>Magistrate Judge<br>Maria Valdez |

## MEMORANDUM OPINION AND ORDER

Plaintiff Harold Dale ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied his claim for Social Security Disability Insurance ("SSDI") benefits. The parties have consented to the jurisdiction of this Court pursuant to 28 U.S.C. § 636(c). For the following reasons, the Court grants the Commissioner's Motion for Summary Judgment, [Doc. No. 19], and denies Plaintiff's Motion for Summary Judgment, [Doc. No. 11].

---

[1] Carolyn W. Colvin is substituted for her predecessor, Michael J. Astrue, pursuant to Federal Rule of Civil Procedure 25(d).

# BACKGROUND

## I. PROCEDURAL AND FACTUAL HISTORY[2]

Plaintiff has suffered from a variety of back, leg, knee, and foot problems, arthritis in his hands and all of his joints, bipolar disorder, and depression, which he claims render him unable to work. Plaintiff thus filed a Title II application for SSDI benefits, alleging a disability onset date of May 1, 2006.[3] His application was denied initially and upon reconsideration. Accordingly, Plaintiff requested and received a hearing before an Administrative Law Judge ("ALJ"), who determined that Plaintiff was not disabled at Step Five of the Social Security Administration's sequential analysis.

At the hearing, the ALJ found that Plaintiff suffered from the following severe impairments: major depression; degenerative disc disease of the lumbar spine; bilateral knee osteoarthritis; rheumatoid arthritis; and right eye blindness. After determining that Plaintiff did not meet any listed impairment, the ALJ then calculated Plaintiff's Residual Functional Capacity ("RFC") and found that he could perform light work with the following exceptions: he should only occasionally stoop, crouch, or climb ladders, ropes, or scaffolds, and no more than frequently balance, kneel, crawl, or climb ramps and stairs; he should avoid even moderate exposure to extreme cold, unprotected heights, and moving machinery; he cannot perform jobs requiring binocular vision; his work should not involve anything more than simple,

---

[2] The following facts from the parties' submissions are undisputed unless otherwise noted.

[3] Plaintiff later amended his disability onset date to April 1, 2007.

routine, and repetitive tasks, performed in an environment free of fast-paced production requirements and involving only simply work-related decisions, and few, if any, work-place changes; and he should only occasionally interact with the public, coworkers, and supervisors.

The ALJ then consulted with a Vocational Expert ("VE") to determine if Plaintiff could perform his past relevant work or any jobs in the national economy. On the basis of his RFC assessment and the VE's testimony, the ALJ concluded that Plaintiff could not perform his past relevant work, but that he could perform other jobs that existed in significant numbers in the national economy. The ALJ thus found that Plaintiff was not disabled under the Social Security Act.

## STANDARD OF REVIEW

### I. ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is disabled, the ALJ conducts a five-step analysis and considers the following in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform

her former occupation? and (5) Is the claimant unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The claimant bears the burden of proof at steps 1–4. *Id.* Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II. JUDICIAL REVIEW

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Under this standard, the ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). Rather, the ALJ must simply "build an accurate and logical bridge from the evidence to his conclusion," *Clifford*, 227 F.3d at 872, and minimally articulate the "analysis of the evidence with enough detail

and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

On appeal, a court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841. Thus, where conflicting evidence would allow reasonable minds to differ, the court must defer to the decision of the Commissioner. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990).

## **DISCUSSION**

On appeal, Plaintiff argues that the ALJ's decision is neither supported by substantial evidence nor based upon proper legal standards, asserting: (1) the ALJ erred at Step Two by failing to consider all of Plaintiff's severe impairments; (2) the ALJ improperly discredited the opinions of Plaintiff's treating physicians; (3) the ALJ disregarded medical evidence that supports further restrictions on Plaintiff's RFC; (4) the ALJ improperly determined that Plaintiff's claims of pain and functional limitations were not credible; and (5) the record is incomplete. The Court will address each issue in turn.

### I.   **The ALJ's Step Two Analysis**

Plaintiff first asserts that the ALJ erred at Step Two by failing to consider all of Plaintiff's severe impairments; namely, his deformed fingers, Dupuytren's contractures, foot problems related to a prior surgery, and bi-polar disorder. Plaintiff is mistaken. Although an ALJ is required at Step Two to consider all

5

evidence that would support a finding of a severe impairment, *see Clifford v. Apfel*, 227 F.3d 863, 873 (2000), Step Two is merely a threshold inquiry: "[a]s long as the ALJ determines that [a] claimant has <u>one</u> severe impairment, the ALJ will proceed to the remaining steps of the evaluative process." *Castile v. Astrue*, 617 F.3d 923, 926-27 (7th Cir. 2010) (emphasis added). Accordingly, the ALJ's failure to consider some of Plaintiff's alleged impairments was of no consequence because the ALJ found that Plaintiff suffered from other severe impairments and thus proceeded with a more holistic evaluation of his functional limitations at Step Four. Therefore, the ALJ's Step Two error was harmless. *See Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003).

## II.   The ALJ's Step Four Analysis

*A. The Treating Physician Rule*

Plaintiff next asserts that the ALJ violated the treating physician rule by improperly discrediting his treating doctors. The treating physician rule requires ALJs to give controlling weight to a treating physician's opinion if it is both "well-supported" and "not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527. If the ALJ declines to do so, then he must offer "good reasons for discounting the opinion" in light of the following regulatory factors: (1) the length, nature, and extent of the treatment relationship; (2) the frequency of examination; (3) the physician's specialty; (4) the types of tests performed; and (5) the consistency and support for the physician's opinion. *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (internal quotations omitted); 20 C.F.R. § 404.1527.

6

Specifically, Plaintiff claims the ALJ improperly discredited the opinions of Dr. Stampley (Plaintiff's psychologist); Dr. Goebel (a consultative examiner); and various doctors from the Pain Centers of Chicago.

(1) Dr. Stampley

Dr. Stampley found Plaintiff to be seriously limited in his ability to respond to supervision, coworkers, and customary work pressures, as well as his ability to initiate, sustain, or complete tasks. The ALJ did not discuss these findings, but instead appears to have dismissed them on the basis that Plaintiff saw Dr. Stampley merely for prescription refills. On appeal, Plaintiff simply reiterates Dr. Stampley's findings and misquotes her as stating that Plaintiff "is unable to work" due to his mental impairments. (Pl.'s Br. at 10.) But Dr. Stampley never stated that,[4] and even if she did, such a conclusion would be entitled to little weight. *See* 20 C.F.R. § 404.1527(d) (explaining that medical source opinions concerning disability are "not medical opinions . . . but are, instead, opinions on issues reserved to the [judgment of] Commissioner.") As such, Plaintiff's arguments are woefully underdeveloped and therefore insufficient to warrant remand. *See U.S. v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) (stating that perfunctory and underdeveloped arguments are waived); *Handford ex rel. I.H. v. Colvin*, No. 12 C 9173, 2014 U.S. Dist. LEXIS 3449, at *39 (N.D. Ill. 2014) (applying *Berkowitz* to reject underdeveloped arguments in a Social Security appeal).

---

[4] Dr. Stampley merely noted that Plaintiff "*claims* he can't work." (R. 314) (emphasis added).

(2) <u>Dr. Goebel</u>

Similarly, with respect to Dr. Goebel's opinion, the Court cannot discern the precise error that Plaintiff alleges on appeal. According to Plaintiff, Dr. Goebel opined that Plaintiff was moderately limited in his persistence and pace. But the ALJ stated just that in in his opinion: "I find moderate limitations in . . . [Plaintiff's] concentration, persistence, [and] pace." (*See* R. 26.) Again, Plaintiff offers no explanation of how this is an error, much less a reversible error, and therefore Plaintiff's "argument" fails.

(3) <u>The Pain Center Doctors</u>

Dr. Orbegoso and Dr. Chinthagada opined that Plaintiff's level of functioning is acceptable for daily living activities only and not for work. The ALJ, however, did not discuss these findings, and instead analyzed and discounted the opinion of Dr. Morales, another Pain Center doctor who similarly opined that Plaintiff could not work. Plaintiff thus claims the ALJ erred by failing to analyze the opinions of all of the Pain Center physicians. The Court disagrees.

Although, at first glance, it appears that the ALJ indeed ignored the other Pain Center doctors, a careful review of the record reveals that he simply attributed the other doctors' opinions to Dr. Morales. This confusion likely resulted from the organization of the record. For example, Dr. Orbegoso's one-page report does not contain a signature and is sandwiched between records signed by Dr. Morales. As such, it is understandable that the

ALJ conflated their opinions. The same can be said of the other Pain Center records that Plaintiff claims the ALJ ignored. In any event, the exhibits cited by the ALJ clearly indicate that he analyzed each Pain Center physician's opinion, (*Compare* R.26 *with* R. 452-87, 513-554, 634-80), and therefore his failure to distinguish each of them by name was harmless error.

On a substantive level, Plaintiff also challenges the ALJ's reasons for discrediting the Pain Center physicians, but this challenge is meritless. The ALJ discredited the Pain Center doctors because: (1) they did not conduct a function-by-function analysis in their reports; (2) Plaintiff was not entirely truthful to the them[5] and therefore their accounts of Plaintiff's limitations (namely, pain) are of limited value; and (3) the gravamen of their findings is that Plaintiff is unable to work, which is a conclusion reserved to the discretion of the Commissioner. These are precisely the sort of "minimal articulations" contemplated by the Seventh Circuit, and the Court therefore affirms the ALJ's decision in this regard.

*2. Medical Evidence and Plaintiff's RFC*

Plaintiff next disputes the ALJ's finding that he can perform the full range of light work.[6] To that end, Plaintiff claims the ALJ ignored the findings of two consultative examiners, Dr. Jain and Dr. Shah, and argues as follows:

---

[5] Specifically, Plaintiff did not inform the Pain Center doctors of the extent of his use of herion, cocaine, speed, and peyote. (*See* R. 295.)

[6] *See* 20 C.F.R. § 404.1567(b) (defining light work as the ability to lift ten pounds frequently and twenty pounds occasionally and to stand and walk for at least six hours a day).

9

> That evidence supports that [Plaintiff] has left knee pain of 6/10 to
> 8/10 and swelling and degenerative joint disease. Physical exam
> showed flexion of the lumbosacral spine . . . straight leg raining signs .
> . . without about 70 to 80 degrees flexion of the right hip produces pain
> from the lumbar spine to the right toes. . . . In addition, [Plaintiff] has
> Dupuytren's, [sic] contracture of both hands . . . he has deformed
> fingers and toes.

(Pl.'s Br. at 12.) What Plaintiff hopes to show from this passage is all but clear. On its face, the above evidence is not inconsistent with the ALJ's RFC assessment,[7] nor does Plaintiff explain why he believes it to be. Indeed, Plaintiff fails to articulate any deficiency with the RFC whatsoever, and instead merely cites the standard for "light work" and reiterates a litany of medical evidence, all of which was incorporated into the ALJ's RFC assessment.

Although the ALJ did not discuss every medical report highlighted in Plaintiff's brief, the ALJ was under no obligation to do so. *See Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). Rather, the ALJ was required only to build a logical bridge from the evidence to his conclusions, which is precisely what he did here. Ultimately, then, Plaintiff simply invites the Court to reweigh the evidence and

---

[7] For example, the ALJ explicitly considered Plaintiff's degenerative disk disease, osteoarthritis, and rheumatoid arthritis, and accordingly limited him to light work with only occasional stooping and crouching, no more than frequent kneeling or crawling, and where he could avoid exposure to extreme cold. With respect to Plaintiff's Dupuytren contractures, the ALJ indeed considered them but found that he was not functionally limited in this regard because, as Dr. Shah's report indicates, Plaintiff was able to hold a pen and tie his shoe laces, and he retained full motor strength in all four extremities. (*See* R. 28, 409.) Similarly, although Plaintiff makes much of his foot problems, the ALJ reviewed Plaintiff's treatment records and found no evidence of an abnormal gait or an inability to stand for six hours. (*See* R. 26.)

come to a different conclusion, which the Court cannot do.[8] *See Ketelboeter v. Astrue*, 550 F.3d 620, 624 (7th Cir. 2008).

Beyond physical impairments, Plaintiff further argues that the ALJ's hypothetical to the VE did not fully account for his moderate limitations in concentration, persistence, and pace. Plaintiff is mistaken. The ALJ limited Plaintiff to simple, routine, and repetitive tasks, performed in an environment free of fast-paced production requirements, involving only simple work-related decisions, and few, if any, work-place changes. In addition, the ALJ further reduced Plaintiff's workplace distractions by precluding him from frequent interaction with the public, coworkers, and supervisors. The ALJ's hypothetical thus excludes workplace environments that would trigger Plaintiff's anger problems, depression, and difficulty socializing, which form the basis of his limitations in concentration, persistence, and pace. The Court therefore finds no error in the ALJ's hypothetical. *Compare Stewart v. Astrue*, 561 F.3d 679, 684-85 (7th Cir. 2009) (explaining that phrases like "simple and routine tasks," on their own, will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence, and pace) *with Murphy v. Astrue,* No. 11 C 831, 2011 WL 403616, at *12 (N.D. Ill. 2011) (finding that restricting a Plaintiff to slower-paced, non-stressful jobs with few interactions with the public and without strict quotas

---

[8] In a related argument, Plaintiff further claims that the ALJ should have found him limited to sedentary work and therefore consulted the Medical Vocation Guidelines, which would have resulted in a finding of disability. But, as discussed above, the ALJ's RFC assessment is supported by substantial evidence, and therefore Plaintiff's argument is baseless.

11

sufficiently accounts for moderate limitations in concentration, persistence, and pace).

### 3. Plaintiff's Credibility

Plaintiff's last issue with the RFC assessment is the ALJ's finding that Plaintiff's subjective complaints of pain were not credible. To overturn an ALJ's credibility determination, a plaintiff must show that it was "patently wrong" and "lack[ing] in any explanation or support." *Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010). This is a very deferential standard, particularly because "a reviewing court lacks direct access to the witnesses, lacks the trier of fact's immersion in the case as a whole, and lacks the specialized tribunal's experience with the type of case under review." *Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004). In the instant case, the ALJ discredited Plaintiff because his complaints of pain were inconsistent with the record,[9] he misrepresented the extent of his substance abuse to the Pain Center doctors, and there was an eighteen-month treatment gap during a time when Plaintiff claimed his pain was severe. Although Plaintiff alleges that the gap in treatment was due to a lack of insurance, and that at least one pain center doctor observed him using a cane, this hardly resolves the larger credibility issues that the ALJ identified — namely, Plaintiff's misrepresentations and the litany of records showing that he did not use a cane and could walk normally. As

---

[9] For example, Plaintiff declared that he needs a cane to walk and that he can walk only two to three blocks before needing a break. Yet Plaintiff told several doctors, and even admits in his brief, that he regularly walks two miles without issue (and without mentioning the need for a cane). (*See, e.g.,* Pl.'s Br. at 8; R. 305, 358, 409, 536-37, 544.)

12

such, Plaintiff has not shown that the ALJ's credibility determination was patently wrong, and the Court will therefore not disturb it.

C.     **The Completeness of the Record**

Lastly, Plaintiff appears to argue that this case should be remanded because he filed a prior disability application, which contained important records that the ALJ did not consider. Specifically, Plaintiff believes the ALJ was unaware of Dr. Jain's reports, Plaintiff's bi-polar disorder, and the "E Exhibits, which are the Disability Related Development documents." (Pl.'s Br. at 15.) This argument is unavailing. Plaintiff neither specifies which documents the ALJ allegedly ignored nor offers any explanation of how consideration of those documents would change the outcome of this case on remand. Therefore, Plaintiff's argument fails.[10] *See Berkowitz*, 927 F.2d at 1384.

---

[10] It is worth noting that the ALJ was clearly aware of Dr. Jain's reports and Plaintiff's bipolar disorder. (*See, e.g.,* R. 26, 61-63.)

# CONCLUSION

For the reasons set forth above, the Court grants the Commissioner's Motion for Summary Judgment, [Doc. No. 19], and denies Plaintiff's Motion for Summary Judgment, [Doc. No. 11].

**SO ORDERED.**                                   **ENTERED:**

**DATE:  January 22, 2015**                       _____
                                                  **HON. MARIA VALDEZ**
                                                  **United States Magistrate Judge**